Magistrate Judge Theresa L. Fricke

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CALEB JESSIE CHAPMAN,<br><br>Defendant. | NO. MJ21-05185<br><br>GOVERNMENT MEMORANDUM SUPPORTING DETENTION |

The United States of America, by Tessa M. Gorman, Acting United States Attorney, and Kristine L. Foerster, Assistant United States Attorney for the Western District of Washington, file this Government Memorandum in Support of Detention.

## I. Introduction

On September 1, 2021, the defendant had an initial appearance on a Complaint charging him with one count of Assault by Striking, Beating or Wounding in violation of Title 18, United States Code, Section 113(a)(4). The detention hearing was set for September 7, 2021. The Government submits this supplemental memorandum in support of its request for detention.

## II. Factual Background

At about 2:00 AM on August 29, 2021, CALEB CHAPMAN contacted R.H. at R.H.'s home and gave R.H. a handwritten note that discussed his grievances with the

GOVERNMENT MEMORANDUM SUPPORTING DETENTION / Chapman- 1
MJ21-05185

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

White House, his difficulty with obtaining ammunition, and referenced a pending "revolution" starting on the Olympic Peninsula and in Texas. A copy of the note is attached as Appendix A. At that time CHAPMAN was armed with AR-15 rifle and a handgun that was concealed in his waistband. R.H. told law enforcement that he did not know CHAPMAN and that he was fearful when CHAPMAN showed up at his door at that time of night with weapons.

At about 4:30 AM the same morning, the Peninsula Emergency Communications Center (PENCOM) received a 911 telephone call reporting a wildfire burning in Olympic National Park, about one mile south of the intersection of the Hurricane Ridge Parkway and Mt Angeles Road. The Clallam County Fire Department and US Park Service responded to this wildfire and extinguished it. A Washington Department of Natural Resources wildland fire investigator responded to the fire and determined that it was human caused and intentionally set.

Later that morning, PENCOM received a report that a tree had been cut down and was blocking Deer Park Road within the boundaries of Olympic National Park. Deer Park Road leads to Deer Park Campground and ends just below the summit of Blue Mountain. A Park Ranger located one Douglas Fir tree that had been felled but had been moved to the road shoulder by a Park Service contractor. The tree was originally blocking the road. The Park Ranger located a second Douglas Fir tree that had been cut as if it was intended to be felled but was still was standing.

At about 10:09 AM, Rangers located the vehicle that the defendant had arrived at the park in. An adult female, A.J., was still in the vehicle. A.J. told the ranger that she was CHAPMAN's girlfriend, and that CHAPMAN was armed with multiple firearms somewhere near them on Blue Mountain. On August 29, 2021, A.J. was interviewed by agents. She told them that sometime after midnight on August 29, 2021, CHAPMAN, who had been using methamphetamine, began acting erratically. At approximately 2:00 a.m., after dropping his kids off with his brother, CHAPMAN and A.J. went to R.H.'s house to deliver a note CHAPMAN had written to R.H.

GOVERNMENT MEMORANDUM SUPPORTING DETENTION / Chapman- 2
MJ21-05185

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

After speaking with R.H. and delivering his note to at least one other personal acquaintance, CHAPMAN and A.J. drove to the Deer Park campground in the Olympic National Park. On their way to the campground CHAPMAN drove up the Hurricane Ridge Parkway a short distance, stopped the truck, and walked into the woods. Shortly thereafter A.J. saw embers from a fire near CHAPMAN's location. Upon his return to the truck, CHAPMAN smelled of gasoline. Though A.J. described the fire as being on the Deer Park Road, the fire was found to be within the first mile on the Hurricane Ridge Parkway.

While traveling towards the campground, up Deer Park Road, A.J. indicated CHAPMAN stopped the truck multiple times. A.J. observed CHAPMAN exit the truck and she heard a chainsaw being operated. It was dark and she was unsure of what he was doing. This activity as described by A.J. is consistent with the location of the felled tree observed by NPS employees.

At approximately 6:00 a.m. on August 29, A.J. and CHAPMAN arrived at the Deer Park Campground area. According to A.J., CHAPMAN became increasingly upset. CHAPMAN told A.J. that she was going to die because of the "revolution." CHAPMAN made suicidal comments about himself, including telling A.J. that he was never going to see his children again and that this was his "last day." A.J. stated that she was able to surreptitiously dial 911 from a cell phone during this time. CHAPMAN became aware of this, and grew enraged, telling A.J. that she didn't know what she had just done.

While arguing with A.J., CHAPMAN threw a full and unopened soup can at A.J., hitting her and causing a laceration to her leg. CHAPMAN proceeded to grab A.J. by the head and hit her head, repeatedly, against the car seat while telling A.J. to "shut up." A.J. then observed CHAPMAN leave the truck and walk into the woods while yelling and screaming. A.J. stated that when CHAPMAN left he was wearing a black colored tactical vest, a sleeveless shirt, jeans, and was armed with a semi-automatic rifle, a shotgun, and multiple handguns. During the investigation, law enforcement officers observed a laceration on A.J.'s leg. A.J. reported to law enforcement in a later interview that

GOVERNMENT MEMORANDUM SUPPORTING DETENTION / Chapman- 3
MJ21-05185

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

CHAPMAN held a knife to her wrist prior to their arrival to the park because he wanted to "cut the chip out" of her wrist. She was able to get her arm away from him before he cut into her.

A.J. told agents that CHAPMAN had been talking about a "revolution" and he believes that there is going to be an armed conflict with the government. A.J. told investigators that she did not believe that CHAPMAN would harm the public but believed he will act violently towards law enforcement if he feels threatened. A.J. also believed that CHAPMAN has additional methamphetamine in his possession. Agents did locate a substance believed to be methamphetamine with CHAPMAN's possessions in the forest.

Rangers then evacuated the Deer Park campground, trailheads, and road areas. For the next few hours, NPS Rangers, Port Angeles Police Officers, Clallam County Sheriff's Deputies and Federal Bureau of Investigations (FBI) Special Agents (SA) attempted to locate CHAPMAN using exigent cellular telephone location data (pings), and a police dog.

At about 3:00 PM, the Olympic National Park radio communications site (radio repeater) located at summit of Blue Mountain suddenly stopped functioning. This radio repeater is owned by the National Park Service. It is used by Olympic National Park for emergency response, public safety, and administrative radio communications.

On August 31, 2021, at approximately, 9:00 PM, CHAPMAN was located by an Unmanned Aircraft System (UAS) commonly referred to as a "drone." CHAPMAN was inside the Ford F-250 pick-up truck that was still parked at the Blue Mountain Summit parking lot. The UAS was remotely operated by law enforcement and was being used to perform a reconnaissance of the area. CHAPMAN fired at the UAS with a modified Remington, Model 870, pump-action shotgun with an overall length of less than 26 inches as the stock had been removed.

GOVERNMENT MEMORANDUM SUPPORTING DETENTION / Chapman- 4
MJ21-05185

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Law Enforcement Officers were ultimately able to contact CHAPMAN on his cell phone and were eventually able to negotiate his surrender. At about 9:51 PM, CHAPMAN surrendered to FBI Agents and was placed under arrest.

After CHAPMAN was arrested, NPS and FBI officers seized as evidence four semi-automatic pistols, two semi-automatic rifles and one 20-gauge pump action shotgun from areas adjacent to CHAPMAN's arrest. In CHAPMAN's truck, law enforcement observed two Stihl chainsaws and multiple boxes of ammunition in plain view.

Agents then searched the Blue Mountain radio repeater site with the assistance of the NPS IT Specialist, who is a subject matter expert regarding NPS radio repeaters. He observed that the padlock had been removed and the repeater had been tampered with, including the radio repeater power cable and the transmitting antenna cable, which were removed from the radio repeater.

The NPS Agents searched the general area around the summit of Blue Mountain parking lot. There, they found two caches of CHAPMAN's items that had been left on the Blue Mountain "rainshadow trail." At these locations, agents found several hundred live ammunition cartridges in various calibers and quantities, a loaded Smith & Wesson MP 9mm semi-automatic pistol, radio repeater electrical components, an Olympic National Park radio frequency list, a radio microphone, food and water, knives, general survival equipment, a brown leather journal with CHAPMAN's photograph on it, personal items and identification cards belonging to CHAPMAN, A.J. and other individuals, along with a baggie containing a white crystalline substance believed to be methamphetamine.

When performing records checks of the Smith & Wesson MP .40 caliber semi-automatic pistol, serial number HVN7197, that was seized in the area surrounding CHAPMAN at the time of his arrest, Port Angeles Police determined this pistol was reported as stolen to the Port Angeles Police Department in 2017.

//
//

GOVERNMENT MEMORANDUM SUPPORTING DETENTION / Chapman- 5
MJ21-05185

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

### III. Issue

Is the defendant a flight risk or danger to the community under the factors enumerated in the Bail Reform Act, 18 U.S.C. § 3141, *et seq*.

### IV. Discussion

In determining whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of the community, this Court must consider the nature and circumstances of the offense charged, the weight of the evidence, the defendant's history and characteristics, and the nature and seriousness of the danger posed by the defendant if released. 18 U.S.C. § 3142(g).

**A. The Nature and Circumstances of the Offense**

The nature and circumstances of this offense support detention. The defendant's alleged conduct is extremely concerning in this case and the risk to the community is significant. The defendant brought a cache of weapons, including an illegally altered firearm and a stolen firearm, and over 500 rounds of ammunition into the Olympic National Park. He indicated that his actions were related to a revolution against the government and wrote a letter that says in part, "Do it right Americans, [and] when the ones who say they are proud [and] want those freedoms back as they point a gun at you…Look them right back and shoot the sneaky, cowardly, treasoness [*sic*] punks!!!" The defendant also fired two shots at a government drone with one of the weapons that he brought.

He started a fire in a national park during one of the hottest months of the year, which could have had devastating consequences, and then appears to have taken deliberate steps to interfere with emergency response to the area including cutting down a tree that blocked the road and disabling the emergency radio communication system on the mountain. He made statements to A.J. that he believed they were both going to die and physically assaulted her when she tried to call for help.

Though the defendant did eventually surrender to law enforcement, that was after days in the forest, approximately an hour of negotiating with police, and was in response

GOVERNMENT MEMORANDUM SUPPORTING DETENTION / Chapman- 6
MJ21-05185

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

to significant law enforcement presence including a SWAT Team and BearCat. The defendant's actions were both dangerously erratic and strategic, and a combination that repeatedly put the community at significant risk over the days that he was in the Park.

### B. The Weight of the Evidence

The Court is required to ascribe the least weight to the strength of the evidence, among the four factors, when considering whether to release a defendant. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985). The weight of the evidence nonetheless favors detention due to the strong evidence of the defendant's conduct in this case. A.J.'s description of events is corroborated by the physical evidence, her documented injuries, and witnesses' observations of the defendant's erratic behavior and verbal aggression towards A.J. at the Park.

### C. The History and Characteristics of the Defendant

The Government does not have detailed information about the defendant's personal history, though it does appear that he has family support and owns a home. His criminal history and domestic violence history, as well as his drug use, however support detention. The defendant has a prior weapons conviction from 2001 where there was a warrant issued for a failure to appear and he was out on a pending State charge at the time of this offense.

A.J. reports a history of domestic violence assaults from the defendant. Law enforcement records show multiple calls out to the residence that the two shared, most recently on August 12th when A.J. ran to a neighbor's house and called 911 after the defendant pushed her to the ground and kicked her. There were three domestic violence protection orders entered in 2017 prohibiting the defendant from contacting his ex-wife and three minors. In the accompanying petitions, Mrs. Chapman reported multiple incidents of domestic violence abuse including strangulation, various physical assaults, and verbal threats to use his AR 15 rifle on her. Those protection orders were dismissed due to Mrs. Chapman's death in an automobile accident in 2018.

GOVERNMENT MEMORANDUM SUPPORTING DETENTION / Chapman- 7
MJ21-05185

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

The defendant's history, his drug use, and the fact that he committed this offense while on release from another offense favor detention.

### D. The Nature and Seriousness of the Danger Posed by the Defendant

The defendant's behavior throughout this incident put the community at risk in a variety of ways. He started a forest fire, disabled a communication device meant for emergency services, and assaulted A.J. when she tried to call the police. He threatened to shoot those who he considered the other side of the "revolution" that he believes is coming and brought four semi-automatic pistols, two semi-automatic rifles, one 20-gauge pump action shotgun, a modified Remington, Model 870, pump-action shotgun, a loaded Smith & Wesson MP 9mm semi-automatic pistol, and hundreds of rounds of ammunition into the Park presumably for that purpose. His mental state and the interplay with his methamphetamine use, which was described by A.J. as habitual, makes him unpredictable. Given the facts of this case, it is difficult to overstate the risk that he presents to the community if he is released and becomes similarly agitated again.

### V. Conclusion

The Section 3142 factors justify detention in this case. For the reasons stated above, the United States respectfully requests the Court continue to detain the defendant pending resolution of these charges.

DATED this 7th day of September, 2021.

Respectfully submitted,

Tessa M. Gorman
Acting United States Attorney

*s/ Kristine L. Foerster*
Kristine L. Foerster
Assistant United States Attorney
United States Attorney's Office
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402

GOVERNMENT MEMORANDUM SUPPORTING DETENTION / Chapman- 8
MJ21-05185

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

# APPENDIX A

My name is not important at the moment. I am trying to warn all Americans who believe in Freedom... Freedom from wars fought on our land. This country has lost it's way and needs to get the freedom & rights of free speech, shooting guns because our Ancestor's fought for those rights! Those freedoms & many others SHOULD NOT BE GOTTEN THROUGH A REVOLUTION!!! For a year ammunition could not be bought barely, the whitehouse was overrun, lots of media propaganda & countless weeks spent on BS. DO IT RIGHT AMERICANS & WHEN THE ONES WHO SAY THEY ARE PROUD & WANT THOSE FREEDOMS BACK AS THEY POINT A GUN AT YOU... LOOK THEM RIGHT BACK & SHOOT THE SNEAKY, COWARDLY, TREASONESS PUNKS!!!

TO ALL THOSE WHO HAVE EVER KNOWN ME REMEMBER I AM ME!!! Nothing special but I had my line, lot more variable than some & lot less also. I loved a woman who was taken at her weakest & did not/does not know or remember what she was to be framed for. IF we make it out then her & I will see all of you & laugh at the craziness of life. IF we dont then we shall someday in the place beyond!!!

WE ARE INNOCENT JUST REMEMBER FUBAR NEVER CHANGED WHO HE WAS

THEY ARE GOING TO START A REVOLUTION IN TEXAS & OLYMPIC PENINSULA WITHIN THE NEXT 30 DAYS!!!

Moose Creek

HQ

P.B.

Water Tower

Underground ?

Border Patrol

PARK AVE

Strong Point

Strong Point

New Cohorts in the East

Grays – UHAUL Storage

Ennis

Dry Creek Bonkers Strong Point